# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

MAY 1 2 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

JOSE GUZMAN SALCEDO )
V30843    A2-143U )
I.S.P.    BOX 2199 )
BLYTHE, CA. 92226 )

PLAINTIFF,

v.

CHARLES O. ROSSOTTI )
STEVE GEARY )
TIMOTHY CAMUS )
LUKE YOO )
FIVE UNKNOWN AGENTS )

(Addresses _infra_)

DEFENDANTS,

Case: 1:08-cv-00814
Assigned To : Collyer, Rosemary M.
Assign. Date : 5/12/2008
Description: Pro Se Gen. Civil

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

**ORIGINAL**

### Instructions for filing a Complaint by a Prisoner
### Under the Civil Rights Act, 42 U.S.C. § 1983

This packet contains one copy of a complaint form and one copy of an application to proceed _in forma pauperis_. To start an action, you must file an original and one copy of this complaint form.

Your complaint must be clearly handwritten or typewritten and you must sign and declare under penalty of perjury that the facts are correct. If you need additional space to answer a question, you may use another blank page.

Your complaint can be brought in this Court only if one or more of the named defendants is located within the District of Columbia. Further, you must file a separate for each claim that you have unless they are related to the same incident or problem. The law requires that you state only facts in your complaint.

You must supply a certified copy of your prison trust account, pursuant to the provisions of 28 U.S.C. §1915 effective April 26, 1996. The filing fee is $350.00. If insufficient funds exist in your prison account at the time of filing your complaint, the court _must_ access, and when funds exist, collect an initial filing fee equal to 20 percent of the greater of:

(1)    the average monthly deposits to your prison account, or
(2)    the average monthly balance of your prison account for the prior six-month period.

A. **JURY TRIAL DEMAND**

Pursuant to this Court's Order, Plaintiff demands a jury trial in this case in order to make a more complete record, and to seek justice from deprivations.

Clerk, U.S. District and Bankruptcy Courts

RECEIVED APR 2 8 2008

Thereafter, you are required to make monthly payments of 20% of the preceding month's income. The agency having custody over you must forward payments from your account to the clerk of the court each time the amount in the account exceeds $10.00 until the filing fees are paid.

Therefore, before an assessment can be made regarding your ability to pay, you <u>must</u> submit a certified copy of your prison account for the prior six-month period.

When this form is completed, mail it and the copy to the Clerk of the United States District Court for the District of Columbia, 333 Constitution Ave., N.W., Washington, D.C. 20001.

## I.    SUCCESSIVE CLAIMS

Pursuant to the Prison Litigation Reform Act of 1995, unless a prisoner claims to be in "imminent danger of serious physical injury," he or she may not file a civil action or pursue a civil appeal *in forma pauperis* "if the prisoner has, on three or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or they failed to state a claim upon which relief could be granted."

## II.    PREVIOUS LAWSUITS

A.    Have you begun other lawsuits in state or federal court dealing with the same or similar facts involved in this action?    Yes ( X )    No ( )

B.    Have you begun other lawsuits in state or federal court relating to your imprisonment? Yes ( )    No ( X )    Pending Federal Habeas Corpus Petition.

C.    If your answers to A or B is Yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

    1.    Parties to this previous lawsuit.

        Plaintiffs:  Jose Guzman Salcedo

        Defendants:  FPA Medical Management Inc., et al.,

    2.    Court (If federal court, please name the district; if state court name the county.)
        U.S. Dist. Ct., Cent. Dist. Cal.

    3.    Docket number:  01 CV 1183 H (RBB)

    4.    Name of judge to whom case was assigned:  Marilyn L. Huff

5.   Disposition (for example: Was the case dismissed?  Was it appealed?  Is it still pending?) __Judgment & Dismissal w/o prejudice for want of__ __prosecution.__

6.   Approximate date of filing lawsuit: __July 2, 2001__

7.   Approximate date of disposition: __January 14, 2002__

## III.   PLACE OF CONFINEMENT

__Ironwood State Prison, P.O. Box 2199, Blythe, Ca. 92226__

A.   Is there a prisoner grievance procedure in this institution?  Yes ( X )     No (  )
If your answer is Yes, go to Question III B.  If your answer is No, skip Questions III, B, C and D and go to Question III E.

B.   Did you present the facts relating to your complaint in the prisoner grievance procedure?
Yes (  )        No ( X )

C.   If your answer is Yes to Question III B:

1.   To whom and when did you complain? _____

2.   Did you complain in writing?  (Furnish copy of the complaint you made, if you have one.)     Yes (  )      No (  )

3.   What, if any, response did you receive?  (Furnish copy of response, if in writing.) _____

4.   What happened as a result of your complaint? _____

D.   If your answer is No to Question III B, explain why not. __The California__ __Department of Corrections and Rehabilitation has no jurisdiction__ __over this case.__

E.   If there is no prison grievance procedure in the institution, did you complain to prison authorities?     Yes (  )      No ( X )

F.   If your answer is Yes to Question III E;

1.   To whom and when did you complain? _____

Continuation:  II. Previous Lawsuits C.

1. Jose Guzman Salcedo
2. R&B Falcon Inc.
3. Superior Court of California, County of San Bernardino
4. RCV 056126
5. Ben T. Kayashima
6. Dismissed
7. July 6, 2001
8. October 2, 2001


1. Jose Guzman Salcedo
2. Spruce Technologies and Kirk Paulsen
3. U.S. Dist. Ct. Eastern Dist. of California
4. EDCV 01-0497 VAP (SGLx)
5. Unavailable
6. July 16, 2001
7. Unavailable


1. Jose Guzman Salcedo
2. Sonic Solutions; Turner Broadcasting; and Apple Computers: Robert J. Doris
   Robert M. Greber, Peter J. Marguglio, Clay Leighton, Mary C. Saur,
   Christopher A. Kryzan, Paul Lefebvre, TA Associates, Inc., Michael C.
   Child, Katherine S. Cromwell, Heller, Ehrman, White & Hcauliffe,
   Hambrecht & Quist Guaranty Finance, Kingsbridge Capital limited, Daikin
   Industries Ltd. of Japan, CEO Steven JObs, Astarte Gmbh, Freddie Geier
   VP, Spruce Technologies Inc., Dr. Hiromu Soga CEO, Greg Wallace VP
   Engineering, Rainer Broderson & Kirk Paulsen.

3. U.S. Dist. Court. Cent. Dist. of California
4. EDCV 01-0561 RT (SGLx)
5. Unavailable
6. August 8, 2001
7. Unavailable


1. Jose Guzman Salcedo
2. Charles R. Ofner, Charles O. Rossotti, Steve Geary, Timothy P. Camus,
   Luke Yoo, Five Unknown Agents, S.P. Wolff, Robert Hard, Tom Toth, Greg
   Changley, Michael Blay, James Palacious, P. Ortiz, Don Yoder, Lucia,
   Mascetti, Mario Juarez, Dennis G. Cole, Mo Brickley, Wash. Mut. Bank
   (Valle), (# UNknown Agents), MIchael Wright, Marisol, Hana Salem, Joe
   Cusimano.

3. U.S. Dist. Ct. Cent. Dist. of California
4. EDCV 07-965 (AGR)
5. Alicemarie H. Stotler
6. August 7, 2007
7. October 30, 2007

2.  Did you complain in writing? (Furnish copy of the complaint you made, if you have one.)     Yes ( )       No ( )

3.  What, if any response did you receive? (Furnish copy of response, if in writing.) _____

4.  What happened as a result of your complaint? _____

## IV.  PARTIES

In item A below, place your name and prison number in the first blank and your present address in the second blank. Do the same for additional plaintiffs, if any.

A.  Name of Plaintiff: __Jose Guzman Salcedo__
    Address: __V30843, A2-143, I.S.P., Box 2199, Blythe, Ca. 92226__

In item B below, place the full name of the defendant(s) in the first blank, their official position in the second blank, their place of employment in the third blank, and their address in the fourth blank. Do the same for additional defendants, if any.

B.  Defendant: __Charles O. Rossotti__
    __Commissioner__
    Address: __Department of the Treasury, Internal Revenu Service__
    __1111 Constitution Ave. NW, Washington, D.C. 20224__

    Defendant: __Charles O. Rossotti__
    __Founder/Director__

    Address: __4050 Legatto Rd., Fairfax, Va. 22033__

    Defendant: __Steve Geary__
    __Special Agent__

    Address: __1125 15th St., NW., Ste. 544, Washington, D.C. 20005__

    Defendant: __Timothy P. Camus__
    __Special Agent__

    Address: __1125 15th St., NW., Rm.-700-A, Washington, D.C. 20005__

## V.  STATEMENT OF CLAIM

Continuation:  IV. Parties B.

1    Luke Yoo
     Special Agent
2    1340 W. 6th St., Los Angeles, Ca. 90017

3    Five Unknown Agents (Bivens)
     Agents
4    1125 15th St., NW., Washington, D.C. 20005

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

State here briefly as possible the <u>facts</u> of your case. Describe how each defendant is involved. Include the names of other persons involved, dates, and places. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach extra sheets, if necessary.

SEE ATTACHED PAGES

## VI. RELIEF

State briefly exactly what you want the Court to do for you.

SEE ATTACHED PAGES

Signed this ___27___ day of ___March___, ___2008___.

_Jose G. Salcedo_
(Signature of Plaintiff)
JOSE GUZMAN SALCEDO

I declare under penalty of perjury that the foregoing is true and correct.

___03/27/08___
(Date)

_Jose G. Salcedo_
(Signature of Plaintiff)
JOSE GUZMAN SALCEDO

## Preliminary Statement

1       This is a civil rights action filed by Plaintiff, Jose Guzman Salcedo, a

2   State Prisoner in California, for injunctive and punitive relief under 42

3   USCA §1985(2)(3); United States Enforcement Act of 1871, Ku Klux Klan Civil

4   Rights Act; and 50 USCA §841, successors and subsidiary organization,

5   subversive activities to overthrow the constitutional rights and human rights

6   to be secure in property, papers, immunities, privileges and life.

7       This Court has jurisdiction over Plaintiff's claims of violation of

8   Federal Constitutional rights under 42 USCA §§1981.2-c, 1994; 28 USCA §§1331a,

9   1343; 18 USCA §§1581,1582,1584,1961,1962(2); and <u>Bivin v. Six Unknown Agents</u>,

10  403 U.S. 388 (1971), pursuant to 42 USCA §1983.

## Introduction

12      This case originated from Plaintiff's visit with the Internal Revenue

13  Service in Washington, D.C., on or about June 27, 2001.  Plaintiff arrived in

14  Washington, D.C., at approximately 10:00 a.m., and went directly to the

15  Internal Revenue Service, in an effort to see if he could personally meet with

16  IRS Commissioner, Charles O. Rossotti.  Plaintiff's intentions were to confront

17  Mr. Rossotti regarding problems with taxes and corporate stocks, and that

18  Plaintiff had reported his tax returns from 1999 and 2000, and that he had a

19  lot of evidence concerning tax fraud.  Plaintiff's visit to Washington, D.C.,

20  was to show Mr. Rossotti an investment he had made with the R&B Falcon Inc.,

21  of a three-million dollars, and to acquire copies of the bank statement from

22  Mr. Rossotti that he was supposed to make for Plaintiff.  The copies in

23  question, were made in Houston, Texas, as Charles R. Ofner.  Mr. Ofner as the

24  CFO of R&B Falcon.  Plaintiff's intentions were to confront Mr. Rossotti to

25  see that Rossotti and Ofner were in fact the same person.

26      After Plaintiff returned from Washington, false criminal charges were

27  fabricated against Plaintiff in order to put Plaintiff in prison and protect

28  the illicit activities as stated in more detail in the instant Complaint.

**ADDITIONAL DEFENDANTS**

1   Steve Geary, Special Agent, United States Department of the Treasury, is

2   employed in the State of Washington, District of Columbia and acted in his

3   official and individual capacities in maintaining the charges against

4   Plaintiff with Timothy P. Camos, in the State of California, depriving

5   Plaintiff of his property, and forfeiture of assets after arrest and charges.

6   Is being sued in his official and individual capacities.

7

8   Timothy P. Camus, United States Assistant Special Agent for the Department

9   of the Treasury, is employed in the State of Washington, District of Columbia

10  and acted in his official and individual capacities in the State of California

11  in maintaining the charges against Plaintiff with Steve Geary, depriving

12  Plaintiff of his property, and forfeiture of assets after arrest and charges.

13  Is being sued in his official and individual capacities.

14

15  Luke Yoo, Special Agent for the Department of the Treasury of the United

16  States, is employed in the State of California, Los Angeles, and in joint-

17  action with Steve Geary and Timothy P. Camos, while employed and on duty,

18  acted in his official and individual capacity in maintaining and manufacturing

19  charges against Plaintiff in concert with other listed agents in the State of

20  California, deprived Plaintiff of his property, and forfeiture of assets

21  after arrest and charges.  Is being sued in his official and individual

22  capacities.

23

24  Regarding the Five Unknow Agents, et al., These Agents worked for the

25  Department of the Treasury, Washington, D.C., and were present when the

26  other Agents confronted Plaintiff, where these Agents made terrorist threats

27  against Plaintiff and his wife, were also involved in the deprivation of

28  property and assets and are being sued in their official and individual capacit

2

**Due Diligence**

1    Plaintiff's due diligence in pursuing an investigation into the illegal

2  activities, civil rights violations, and return of all confiscated, frozen,

3  and stolen personal properties, is listed in the following "XIII DUE

4  DILIGENCE" Section, and based upon the negative results from Plaintiff's due

5  diligence, there is no accrual date, making this [civil] action timely.

6  ///

7  ///

8  ///

9  ///

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

D. CLAIMS*

## CLAIM I

The following civil right has been violated:

42 U.S.C. §1983 et seq.

42 U.S.C. §1985 et seq.

2nd Amendment, U.S. Constitution: Right to Bear Arms.

4th Amendment, U.S. Constitution: Unreasonable Search and Seizure.

5th Amendment, U.S. Constitution: Deprivation of Life, Liberty, Property w/o due process.

6th Amendment, U.S. Constitution: Nature & Cause of accusation; confront witness, obtain witness, counsel.

7th Amendment, U.S. Constitution: Jury Trial.

8th Amendment, U.S. Constitution: Excessive bail, excessive fines, cruel and unusual punishment.

9th Amendment, U.S. Constitution: Certain Rights Not Denied to the People.

10th Amendment, U.S. Constitution: Rights Reserved.

14th Amendment, U.S. Constitution: Privileges & Imm.; deprived of equal protection of the laws; deprived life, liberty, property w/o due process;

Article I, §1, Cal. Constitution: Inalienable Rights.

Article I, §13, Cal. Constitution: Unreasonable Search and Seizure.

Art. I, §§15,17,24, Cal. Constitution: Due process of Law; Assistance of Counsel; Cruel and Unusual Punishment; Excessive fines; Constitutional Rights--Reserved.

Supporting Facts: Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

Relevant History

I.

On February 5, 2005, Plaintiff initiated and requested an investigation from the Federal Internal Revenue Service regarding Plaintiff's Social Security Number (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), and into Companies (1) FPA Medical Management Inc. "FPAM"; (2) American Shared Hospital Services "AMS"; and (3) R&B Falcon Inc. "FLC", including "Charles R. Ofner", former Senior Vice President of R&B Falcon.

On March 23, 2005, Plaintiff received a response stating "There is no open criminal investigation activity under your Social Security Number." (See **Exhibit "A"**, Letter dated March 23, 2005.)

On February 16, 2006, and March 29, 2006, Plaintiff again requested assistance from the IRS; Teresa A. Franklin, Director of Examinations at the Internal Revenue Service in Washington, DC; subsequently asking H&R Block Investor Relations Manager, Pamela Kearney, in Kansas City, MO., to help Plaintiff reopen certain bank accounts...

*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.
(See Additional attached pages)>>>> 2 thru 13

Supporting Facts Cont.:

and to receive these bank statements so that Plaintiff could report his income taxes for the years of 2000, 2001, and 2002.  The bank accounts were with various banks, namely:

1) Washington Mutual Bank, 8730 19th St., Rancho Cucamonga, Ca. 91701; ABA 322271627; Rosa Salcedo, Acc.# 3940294824; Jose & Rosa Salcedo, Acc.# 2938481807.

2) Washington Mutual "Property Loan", NU# 0019663988; Washington Mutual Financial Securities Acc.# 022252869.

3) Pomona First Federal Bank; ABA 322270495, Acc.# 314080349.

4) E*Trade Group; ABA 121000018, Acc.# 8900346256; Acc.# 1008-7142.

5) Wells Fargo Bank, 10540 Foothill Blvd., Suite 110, Rancho Cucamonga, Ca. 91730; ABA 121000248, Jose G. Salcedo, Acc.# 5226451184; Alfonso Salcedo, Acc.# 5229507057; Ralphy Salcedo, Acc.# 5229535991; Gustavo Salcedo, Acc.# 522954368.

6) United Missouri Bank, Kansas City, Mo.; ABA 101000695, Acc.# 96100871428.

7) Citizens Business Bank; ABA 122234149, Acc.# 238120055.

8) Sumitomo Bank of California; ABA 122003396, Acc.# 7609387370.

9) Union Bank, 11551 Foothill Blvd., Rancho Cucamonga, Ca. 91730; ABA 122000496, Acc.# 3341056426, Acc.# 3343030775.

Supporting Facts Cont.:

10) Bank of America, 9719 Foothill Blvd., Rancho Cucamonga, Ca. 91730;
ABA 1222000661, and ABA 121000358; Salcedo Corp. Acc.# 1173506455;
Salcedo Water Trucks, Acc# 0210202176; Rosa Salcedo, Acc.# 0056808610;
Jose R. Salcedo, Acc.# 0056609248; Roman R. Salcedo, Acc.# 00568-09186;
Alfonso R. Salcedo, Acc.# 00569-08936; Rafael R. Salcedo, Acc.# 00565-
09002, Juan R. Salcedo, Acc.# 00567-08956; Gustavo R. Salcedo, Acc.#
00564-08967; Louanna Salcedo, Acc.# 00564-09234; Viviana Salcedo,
Acc.# 00567-09223; Katrina Salcedo, Acc.# 00560-09212; Joseph Salcedo,
Acc.# 00561-09199; Adriana Perez, Acc.# 00565-09163; Laura Perez,
Acc.# 00561-09175; Jose G. Salcedo, Acc.# 10000426956, Acc.#
1101736936, and 1397085076.

Plaintiff did not receive a response on this inquiry from either agency.
The Internal Revenue Service did not respond, as required by law, in that, in
the previous letter from Teresa Franklin, Director of Examinations, dated
March 23, 2005 (Exhibit A), clearly stated that "If you suspect or know of an
individual or company, or bank, that is not complying with the Tax Laws, you
can report this."  Plaintiff clearly requested an investigation be conducted
into certain individuals, banks, and companies for not complying with the
Tax Laws.

In Plaintiff's February 5, 2005, petition for an investigation regarding
the American Shared Hospital Service "AMS"; Medical Management Inc. "FPAM";
R&B Falcon Inc. "FLC"; and Plaintiff's social security number, in which
Plaintiff suspected tax fraud within these companies and reported them
accordingly, in that Plaintiff wanted to let the Department of the Treasury,
Internal Revenue Service, Washington, DC, know that Plaintiff had investments
in these companies; that Plaintiff had reported his taxes from these
companies from 1998, 1999, and 2000; and that Plaintiff believed he had the
lawful right and duty to ask for and receive an investigation concerning

1    suspected tax evasion and fraud by these companies and to clear any

2    suspicions of certain persons, including Plaintiff.

3       Plaintiff filed a civil action in the Superior Court of California,

4    County of San Bernardino, case number RCV-056126, alleging that the founder

5    of "American Shared Hospital Service" "AMS", Charles O. Rossotti, and the

6    Commissioner from the Internal Revenue Service "IRS", and the person who is

7    also the CEO of R&B Falcon Inc., "FLC", Charles R. Ofner, are in fact the

8    same person.  And, that there are also suspicions that "AMS" is connected

9    with FPA Medical Management Inc. .  Plaintiff also filed a civil action and

10   Federal Question, cause number 28:1331 on FPA Medical Management Inc., et al.

11   "FPAM" for Securities Violation.  (See **Exhibit "B"**, U.S. Dist. Court Docket

12   Sheet, filed 07/02/01.)

                                    II.

14      Regarding R&B Falcon, Inc.  "FLC", on May 18, 1999, Plaintiff met with

15   CFO, Charles R. Ofner, for approximately one-hour, as a prospective investor.

16   Charles R. Ofner gave Plaintiff incorrect and misleading information

17   regarding stocks Plaintiff had purchased (there was an investment of

18   approximately three-million dollars (3,000,000) in R&B Falcon Inc.), causing

19   Plaintiff to hold-on-to the stocks in the Company for another 10-months.

20   Charles R. Ofner knew the Company was in trouble and destine for foreclosure

21   or bankruptcy, however, kept this information from Plaintiff and his wife.

22   On May 19, 1999, there was a stockholders meeting, whereas Plaintiff and his

23   wife met with Charles R. Ofner in the meeting for an additional three-hours.

                                    III.

25      In regards to the Commissioner, Charles O. Rossotti, from the IRS, and

26   the Founder from the American Shared Hospital Service "AMS", Charles O.

27   Rossotti: Plaintiff began having problems with his income taxes and credit

28   from the companies that he had reported his taxes from in 1999 and 2000.

                                    4

From the previous meeting with Charles R. Ofner on May 19, 1999, there began to show more problems with other companies, and that fraud was involved. Companies such as Sonic Solutions Int. "SNIC"; Turner Broadcasting and Spruce Technologies, (Kirk Paulsen), (See, **Exhibit "C"**, Lawsuit on Corrupt Organizations). There were also other similar problems with Plaintiff's account with E*Trade Securities, in Account number 1008-7142.

In addition to the above, there was also a problem with the Washington Mutual Home Loan, Account number 0019663988. (400,000.00) This loan was deposited into Plaintiff's E*Trade Group, Account number 1008-7142, for E*Trade to transfer to "Bancomer", a Bank in Mexico, and then from Bancomer to transfer to "Mercury Bank", in the Cayman Islands, and then from Mercury Bank to transfer the money to an E*Trade account; with this loan money from Washington Mutual, Plaintiff purchased stock, such as, "Que Pasa.comm" ("Pasa"); American Management Hospital Service "AMS"; R&B Falcon "FLC"; Sonic Solutions "SNIC"; Univision Communications Inc. "UVN"; New York Times Co. "NYT", all under Plaintiff's E*Trade account (1008-7142). Plaintiff traded hundreds of stocks. A lot of theses Companies do not even exist, they only consist of bank accounts; Plaintiff found out.

It is noteworthy here, that the account from Mercury Bank from the Cayman Islands, is the same account that the investment where the three-- million dollars was invested with R&B Falcon Inc., and is also noteworthy that CFO Charles R. Ofner made copies of the bank statement. Again, Plaintiff alleges that Charles R. Ofner, from R&B Falcon, is the same person who held the position of Commissioner from the IRS, Mr. Charles O. Rossotti, is also the same person who founded the American Management Service "AMS", who is also connected to FPA Medical Management Inc. "FPAM".

**IV.**

Subsequent to the above with these Companies and Plaintiff's tax returns

5

and credit cards, Plaintiff visited the Internal Revenue Service in Washington, DC, on June 27 (or 28), 2001, Plaintiff arrived at approximately 10:00 a.m., and went straight to the Internal Revenue Service, in an effort to see if he could personally meet with the Commissioner, Charles O. Rossotti however, Rossotti's administration would not allow Plaintiff to meet with Mr. Rossotti, informing Plaintiff that he needed to make an appointment in advance of three weeks, whereas Plaintiff explained that he had problems with his taxes and corporate stocks, and that Plaintiff had reported his tax returns from 1999 and 2000, and that he had a lot of evidence concerning tax fraud.  This evidence Plaintiff obtained from the California Secretary of the State, in Sacramento, and the Los Angeles Office Records Department, and also corporations from San Francisco, where Plaintiff visited.

Plaintiff's visit to the IRS in Washington, DC, was to confront Charles O. Rossotti and show him the investment with R&B Falcon Inc., of the approximate three-million dollars, and to remind Mr. Rossotti about the copies that he made from the bank statement.  The copies were made in Houston, Texas, as Charles R. Ofner.  Ofner as the CFO from R&B Falcon.  Plaintiff's intentions were to confront Mr. Rossotti, to see with his own eyes that Mr. Rossotti was in fact the same person as Mr. Ofner.

Plaintiff obtained this information and photos of the Commissioner of the IRS, Charles O. Rossotti, from the internet and Government sites.  Plaintiff contends that the person from the picture of the IRS Commissioner, was the same person that Plaintiff met with in Houston, Texas, as CFO Charles R. Ofner.

Plaintiff and his wife Rosa E. Salcedo both agree that Charles O. Rossotti and Charles R. Ofner are in fact the same person.  This is why Plaintiff has been requesting an investigation into these two people because, either Rossotti or Ofner are not complying with the U.S. Tax Laws.

On this same day, June 27, 2001, Plaintiff left the IRS Building and went to visit the wife of the Commissioner (Mrs. Rossotti).  Mrs Rossotti is a lawyer in washington, DC, and also could not be seen without an appointment, therefore, Plaintiff left the telephone number and the Hotel name where he was staying (Hilton Hotel).  Plaintiff then went to see Senator Dianne Feinstein at her Capitol Office, however, no one would see Plaintiff. Plaintiff then attempted to see Senator Barbara Boxer, however, again no one would see Plaintiff.  Plaintiff then attempted to see Congressman Joe Baca, again to no avail.  Plaintiff then returned to the Hilton where he was staying.

It should be noted that the only office that Plaintiff told anyone where he was staying, was the Lawyer's Office of Mrs. Rossotti.

## V.

After Plaintiff had arrived back at the Hilton Hotel; at approximately 6:45 p.m., Plaintiff received a phone call from Special Agent Steve Geary of the Department of the Treasury, Treasury Inspector General, for Tax Administration, (see **Exhibit "D"**), where Agent Geary requested that Plaintiff meet him at the Agent's Office, however, Plaintiff did not want to go because it was late and Plaintiff had had a busy day, therefore, Agent Geary forced Plaintiff to have a meeting in the Hotel lobby, a meeting that was more along the line of an interview.  At this interview there were other Agents:  Timothy P. Camus, Assistant Special Agent in Charge (see also Exhibit "D"); and five other unidentified agents from the Department of the Treasury, Treasury Inspector General, for Tax Administration.

There were terrorists threats made against Plaintiff on how he should not pursue an investigation against the Commissioner and his wife.  There were also comments that Plaintiff needed to have brain surgery.  This interview lasted approximately 45 minutes, and was recorded by the agents that remain

7

1  unidentified to this date.  In addition, Agents Geary and Camus took notes of

2  everything discussed.  There is also testimony regarding this conversation

3  and the threats, on the record (transcripts) in the Superior Court of

4  California, County of San Bernardino, case number FWV-025036.

### VI.

6  Subsequent to Plaintiff's return to California from Washington, Plaintiff

7  initiated several lawsuits on various Agencies and Companies (see **Exhibit "C"**

8  on corrupt organizations.  However, after Plaintiff conducted further

9  investigations of Washington, DC, Sacramento, and Los Angeles, California,

10  records, on March 10, 2002, Plaintiff was faced with a number of serious

11  problems by various law enforcement agencies, whom manufactured false

12  information in order to enter upon Plaintiff's property alleging that they

13  had received a phone call from an unknown source, that Plaintiff was holding

14  his family hostage within their residence, which upon entry escalated into

15  a serious situation, and for no valid reason, as the allegation was in fact

16  false.  In turn, false criminal charges were maliciously fabricated against

17  Plaintiff, in order to put Plaintiff in prison and protect their illicit

18  activities.

### VII.

20  Soon after Plaintiff's arrest by the San Bernardino County Sheriff's

21  Department and other law enforcement agencies, while being held at the "West

22  Valley Detention Center", in San Bernardino County, in October and November

23  of 2002, Plaintiff was visited frequently by all sorts of State and Federal

24  government officials, who also recorded the conversations, that compromised

25  certain Government Agencies, such as the Treasury Department (Internal

26  Affairs Division), and the Internal Revenue Service.  (See Exhibit "D")

### VIII.

28  Plaintiff requested an investigation into these agents and government

officials by various government agencies, too numerous to name here, where
subsequently on November 6, 2002, two Detectives from the Rancho Cucamonga
Sheriff's Station, Detective S.P. Wolff, and Detective Robert Hard; and
Special Agent Luke Yoo from the Department of the Treasury, Internal Revenue
Service, Criminal Investigation Division; and from the Los Angeles IMPAC
TASK FORCE's Sergeant Tom Toth, and Detective Greg Changly, personally took
Plaintiff from the West Valley Detention Center, to the Rancho Cucamonga
Sheriff's Department to interrogate Plaintiff about alleged money laundering
and wire transferring from Aguascalientes, Mexico and criminal profiteering
in case number 110208282, and San Bernardino County case number FWV-025776.
These law enforcement agents also personally took Plaintiff to his home on
12770 Amber Lane, in San Bernardino, looking for wire transfer money from
Aguscalientes, Tijuana, Mexico.  When these Officers took Plaintiff to his
place of residence, not only were they looking for money, they were also
looking for stock certificates, and were taking an inventory of everything
inside the house and on the property.  These officers were also searching
for the documents relating to the several lawsuits against the companies
for tax evasion and fraud.

IX.

On this same day, November 6, 2002, San Bernardino County Sheriff's
Department's West Valley Detention Center, Officer Michael Blay, Detective
S.P. Wolff, and Internal Revenue Service Agent Luke Yoo, specifically gave
Plaintiff instructions or orders to transfer (tax) money, to the Citizen's
Business Bank, located at 301 Vanderbilt, in San Bernardino, California,
92402.

On February 27, 2004, these same agents or officers instructed or ordered
an International Wire Transfer, wire numbers 3999431 and 3999550 to be sent
to an account credited in Plaintiff's name, into account number 238120055.

9

1   these Agents or Officers are denying that they had Plaintiff transfer the

2   money into this account. There were other deposits made into this account

3   of approximately $7,000, on deposit and more. A Ms. Tammy Cornwell from

4   Citizen's Business Bank responded to Plaintiff's inquiries. (See **Exhibit**

5   **"E"**, Letter from Dolly L. Nugent, VP Compliance Officer, dated June 16, 2004)

6   In Ms. Nugent's letter, she stated that "Tammy Cornwell responded to earlier

7   letters sent by you concerning this same issue. In her letters she stated

8   that we reviewed our records and found no account under your name or social

9   security number. The account number that you state belongs to you

10  (238120055) belongs to the San Bernardino County Sheriff's Department West

11  Valley Detention Center." "In your letters you stated that an international

12  wire transfer was supposed to have been received by our bank for your

13  benefit on either 11-08-02 or 12-06-02. We have searched our wire transfer

14  records and find no incoming wire in your name (Jose Guzman Salcedo). In

15  addition, we have no records that a wire for your bebefit was ever returned

16  to the sending bank."

17                                    X.

18  Federal Reserve Agent, Ariane M. Smith, Intenal Affairs Sergeant James

19  Palacious from San Bernardino County, and Captain P. Ortiz from Rancho

20  Cucamonga Sheriff's Station, were contacted regarding the above transfer,

21  however, with no answer or response as to where the money was at. Plaintiff

22  complained to various agencies that Citizen's Business Bank and its agents

23  needed to be investigated to find out where this money is, because this

24  money needs to be reported with the Internal Revenue Service, and also to

25  find out with what intentions the Agents or Officers made Plaintiff transfer

26  and deposit this money into the San Bernardino County Sheriff's Department

27  West Valley Detention Center account number 238120055.

28  ///

## XI.

Plaintiff argues that it is clear from the above, that the Officers initiated a plan on how to enter upon and into Plaintiff's property, residence and bank accounts, to take money, and other items of value or monetary concern, including legal document information regarding the lawsuits.  These Agents and Agencies from the Internal Revenue Service, Treasury Department, San Bernardino County Sheriff's Department, Los Angeles County IMPAC TASK FORCE, San Bernardino County Superior Court Judge, Dennis G. Cole, and all others, sought court orders to search and dig-up Plaintiff's property, residence, and bank accounts.  (See Exhibit "A".)  However, although taken, no stock certificates, bonds, lawsuit court paperwork, money, cashiers checks, mexican pecos, currency from other countries, travelers checks, or wire transfers, were reported.

In addition to Plaintiff's property being dug-up for more than three days, these Government Officials also searched Plaintiff's home in Aguascalientes Mexico.

## XII.

Plaintiff has had his entire life destroyed by the retalitory actions of Government Officials, including but not limited to:

Several residential property losses:

1356 Palomares St. Pomona, Ca. 91766

1340 Palomares St. Pomona, Ca. 91766

1344 Palomares St. Pomona, Ca. 91766

1390 Palomares St. Pomona, Ca. 91766

12770 Amber Lane Rancho Cucamonga, Ca. 91739

404 South Towne Ave. Pomona, Ca. 91766 (Shop)

804 South Eleanor St. Pomona, Ca. 91766

///

1    Several personal vehicles:

2    '90 Motor Home 30-feet long         '81 Ford Diesel Water Truck

3    '96 Suburban                        '85 Ford Diesel Water Truck

4    '96 Mercedez

5    '99 Ford Truck

6    '99 Cadillac (from Mexico)

7    '01 Suburban

8    '02 500 Mercedez Convertible

9    ///

10   Several bank bail bonds: Date: Booking #; Bond #; Amount:

11   03/10/02, #0203341336 .......... IW33582 .. ....        $50,000

12   04/25/02, #0204343414      R15011624683 .       . $150,000

13   07/10/02, #0207341335       320353            $250,000

14   07/19/02, #0207342677      11313649           $350,000

15   07/19/02, #0207342677    :  1135780         $1,000,000

16   09/19/02, #0209342613                       $3,500,000

17

18   In addition to the above, Plaintiff (and his family) suffered losses of:

19   Personal bank accounts (frozen and/or closed)

20   An undetermined amount of money; stocks; bonds; jewelery; personal effects

21   et cetra.

22

23   Finally, Plaintiff (and his family) has also suffered emotional,

24   psychological, and physical damage, brought on by the actions of these

25   agencies, and incarceration.  This is especially so, since; even though all

26   charges relating to the allegations of money laundering and fraud against

27   Plaintiff were DISMISSED ON MOTION OF THE DISTRICT ATTORNEY, Plaintiff (and

28   his family) have yet to be returned a single confiscated item and his bank

accounts, and family member bank accounts remain to be closed and
unaccessable to this date. Furthermore, all the above Governmental Agencies
continue to refuse to investigate or assist Plaintiff in the pursuit of
investigations of tax fraud and corruption against these named individuals
or companies.

Plaintiff submits various documents regarding numerous Governmental
inquiries for investigations or assistance, to no avail. These documents or
inquiries are made available in the accompanying Exhibits and explained in
numbered paragraphs as follows:

## XIII
## "DUE DILIGENCE"

This case originated from a multi-million-dollar investment under false
and misleading pretenses, theft of the investment, investigations and
inquiries into corruption; subsequently resulting in conspiracies and civil
rights violations against Plaintiff. The corruption and conspiracy
activities are currently ongoing and unresolved. Based upon Plaintiff's
due diligence in pursuing information and evidence (documents/records), for
purposes of the instant action, makes this timely.

More specifically, and inaddition, Plaintiff had taken from him,
additional multi-million-dollar assets based upon false criminal charges,
whereas the charges were dismissed, however, the multi-million-dollar assets
were never returned.

The timeliness of this civil action is supported by Plaintiff's due
diligence in pursuing his assets, and due to the negative results, there is
no accrual date.

Plaintiff sues for corruption, conspiracy, civil rights violations,
damages, losses, and reimbursements. The following investigative inquiries,
responses and non-responses, are the majority of Plaintiff's due diligence,
and in conjunction with the "Supporting Facts" and "Exhibits": See Exhibit "F"

13

1.  February 24 & 26, 2004, Complaint to the San Bernardino County
    Sheriff's Department regarding the illegal actions by State Officials
    in this case.  (See 2-24-04 Grievance No. 02-04-175)

2.  March 8, 2004, Complaint to the Federal Reserve Bank, Unit
    Investigator, regarding investigations on numerous banks and
    Plaintiff's seized bank accounts; and unanswered responses.  (See
    3-4-2004 Complaint pages 1-11; inquiry letters dated 2-15-2004;
    2-16-2004; 2-20-2004; 2-22-2004)

3.  March 8, 2004, response from the Union Bank of California, Rancho
    Cucamonga Office regarding 3-4-04 inquiry.  (See 3-8-2004 letter)

4.  March 18, 2004, response from the Federal Reserve Bank of San
    Francisco regarding the 3-4-04 Complaint and investigations inquiry,
    with additional March 18, 2004, letter to the Comptroller of the
    Currency regarding the 3-4-04 Complaint and investigations inquiry.
    (See 3-18-2004 letters)

5.  March 24, 2004, response from the Department of the Treasury regarding
    inquiry of Washington Mutual Bank.[1]  (See 3-24-2004 letter)

6.  March 29, 2004, response[s] from the Comptroller of the Currency
    regarding the 3-4-04 and 3-18-04, Complaints and investigations
    inquiries.  (See 3-29-2004 letters)

7.  March 30, 2004, response from the U.S. Department of Justice,
    Federal Bureau of Investigations regarding Plaintiff's 2-19-04
    Complaint/Investigation inquiry.  (See 3-30-2004 letter)

8.  March 30, 2004, response from The Union Bank of California, Rancho
    Cucamonga Office regarding additional information from Plaintiff for
    research purposes.  (See 3-30-2004 letter)

---

[1] Due to Plaintiff's custody status it was not always possible for Plaitiff
to make a copy of the initial inquiry letter.  Plaintiff submits the response.

9.  April 2, 2004, response[s] from the Federal Deposit Insurance
    Corporation regarding the 3-4-08 Complaint and investigation inquiry
    to the Federal Reserve Bank of San Francisco. (See 4-2-2004 letters)

10. April 4, 2004, Complaint and investigation inquiry to the Federal
    Bureau of Investigations, Los Angeles, regarding Plaintiff's case in
    chief. (See 4-4-2004 (7-pages) concerning 3-10-2002 incident Exh. A.)

11. May 20, 2004, response from the Federal Reserve Bank of San Francisco,
    regarding Plaintiff's May 10, 2004, inquiry. (See 5-20-2004 letter)

12. June 8, 2004, response from the Federal Deposit Insurance Corporation
    regarding Plaintiff's April 2004 inquiry. (See 6-8-2004 letter)

13. June 16, 2004, response from Citizens Business Bank regarding
    Plaintiff's June 1, 2004, inquiry to the Federal Deposit Insurance
    Corporation, concerning the March 2 and 18, 2004 responses from
    Employee Tammy Cornwell. (See 6-16-2004 letter)

14. June 22, 2004, response from the Commission on Judicial Performance
    regarding Plaintiff's March 14, 2004, Complaint. (See 6-22-2004 letter)

15. June 29, 2004, response from The Superior Court of San Bernardino
    County regarding Plaintiff's May 21, 2004 inquiry concerning the
    March 14, 2004, Complaint to the Commission on Judicial Performance.
    (See 6-29-2004 letter)

16. July 16, 2004, response from the San Bernardino County Sheriff's
    Department regarding Plaintiff's Complaint of February 24 & 26, 2004.
    (See 7-16-2004 letter)

17. August 30, 2004, response from the Commission on Judicial Performance
    regarding Plaintiff's April 1, 2004, Complaint. (See 8-30-2004 letter)

18. November 15, 2004, response from the Comptroller of the Currency
    regarding Plaintiff's letter forwarded by the Federal Reserve Bank of
    San Francisco concerning the Bank of America. (See 11-15-2004 letter)

15

19. November 21, 2004, Complaint to the County of San Bernardino Risk Management, Human Resources Director regarding three (3) Complaints filed to various agencies concerning Plaintiff's matters. (See 11-21-2004 Complaints, approximately 69 pages)

20. November 30, 2004, response from the Commission on Judicial Performance regarding Plaintiff's Complaint against the Superior Court Judge(s) in this case. (See 11-30-2004 letter)

21. December 22, 2004, response from the Victim Compensation and Government Claims Board regarding Plaintiff's November 22, 2004, Tort Claim Complaint. (See 12-22-2004 letter)

22. January 4, 2005, through November 13, 2006, CDCR-119 documentation regarding "Legal Out" Legal Mail; and January 10, 2005, through December 26, 2006, CDCR-119 documentation regarding "Legal In" Legal Mail. (See documents, 16 pages)

23. January 4, 2005, response from the Human Resources/Risk Management, County of San Bernardino regarding Plaintiff's November 22, 2004, Complaint. (See 1-4-2005 letter)

24. January 10, 2005, response from the Superior Court of California, San Bernardino County regarding Plaintiff's January 3, 2005, letter concerning obtaining transcripts from the cases dismissed against Plaintiff. (See 1-10-2005 letter)

25. January 25, 2005, response from the Superior Court of California, Rancho Cucamonga regarding Plaintiff's Complaint against the Judges in this case. (See 1-25-2005 letter)

26. January 31, 2005, response from the Commission on Judicial Performance regarding Plaintiff's Complaint received on November 24, 2004, concerning the Judges in this case. (See 1-31-2005 letter)

///

16

27.  February 2, 2005, response from the Offices of Latham & Watkins LLP, regarding Plaintiff's FPA Medical Management inquiry.  (See 2-2-2005 letter)

28.  February 3, 2005, response from E*Trade Financial regarding Plaintiff's request for information on FPA Medical Management Inc., and the American Stock Transfer & Trust Company.  (See 2-3-2005 letter and Account Statements)

29.  February 8, 2005, response from the American Stock Transfer & Trust Company regarding Plaintiff's January 31, 2005, inquiry.  (See 2-8-2005 letter)

30.  February 11, 2005, response from the American Stock Exchange regarding Plaintiff's inquiry to that Office.  (See 2-11-2005 letter)

31.  February 25, 2005, response from the Victim Compensation and Government Claims Board regarding Plaintiff's November 22, 2004, inquiry. (See 2-25-2005 letter)

32.  March 3, 2005, response from the Human Resourses/Risk Management, County of San Bernardino regarding Plaintiff's February 5 and 26, 2005, claim against the County of San Bernardino.  (See 3-5-2005 letter)

33.  March 7, 2005, responses from the Federal Reserve Bank of San Francisco regarding Plaintiff's February 25, 2005, inquiry.  (See 3-7-2005 letter)

34.  March 8, 2005, response from the U.S. Securities and Exchange Commission regarding Plaintiff's inquiry into FPA Medical Management, Inc.,; Foundation Health Corporation and Foundation Health System. (See 3-8-2005 letter)

35.  March 23, 2005, response from the Department of the Treasury, Internal Revenue Service, Washington, D.C., regarding Plaintiff's February 5, 2005, inquiry concerning an investigation into a specific company and

17

Plaintiff's Social Security Number. (See 3-23-2005 letter and attached page).

36. March 24, 2005, response from the U.S. Securities and Exchange Commission, Washington, D.C., regarding Plaintiff's inquiry into a number of companies associated with Plaintiff's case matters. (See 3-24-2005 letter)

37. April 20, 2005, response from Health Net, Inc., regarding Plaintiff's inquiry into FPA Medical Management, Inc. (See 4-20-2005 letter)

38. May 4, 2005, response from Human Rights Watch regarding Plaintiff's 10-page inquiry into an investigation on corruption by Federal Government Officials with a copy being sent to the United Nations. (See 5-4-2005 letter)

39. May 6, 2005, response from the U.S. Securities and Exchange Commission regarding Plaintiff's inquiry concerning stolen stock and funds. (See 5-6-2005 letter)

40. May 18, 2005, response from the U.S. Securities and Exchange Commission, Washington, D.C., regarding Plaintiff's inquiry for the SEC to investigate the firms of Deloitte and Touche; and Latham and Watkins. (See 5-18-2005 letter)

41. July 27, 2005, response from the U.S. Securities and Exchange Commission, Washington, D.C. regarding Plaintiff's inquiry into the Amresco Capital Trust and Amresco, Inc. (See 7-27-2005 letter)

42. August 18, 2005, response from E*Trade Financial regarding Plaintiff's accounts. (See 8-18-2005 letter)

43. August 18, 2005, response from the Bank of America, Tampa Florida, regarding Plaintiff's inquiry into his accounts. (See 8-18-2005 letter)

44. August 30, 2005, response from the Commission on Judicial Performance, San Francisco, regarding Plaintiff's Complaint. (See 8-30-2005 letter)

45. September 2, 2005, request for information and investigation from the Federal Deposit Insurance Corp., regarding corruption and retaliation in Plaintiff's matters. (See 3-page letter stamped "Received Sept. 8, 2005")

46. September 15, 2005, response from the Federal Deposit Insurance Corporation regarding Plaintiff's inquiry into the Citizens Business Bank, Ontario, California. (See 9-15-2005 letter)

47. September 26, 2005, Plaintiff's timely Motion to the Superior Court of California, County of San Bernardino, regarding an investigation for corruption by State and Federal Officials in the illegal activities surrounding Plaintiff's matters. (See Motion dated September 26, 2005)

48. October 3, 2005, Plaintiff's timely Motion to the Superior Court of California, County of San Bernardino, regarding Plaintiff's request to Order Respondents To Return Confiscated Property/Funds To Plaintiff; concerning conspiracy, false charges, confiscation of property and funds, and subsequent dismissal of all charges without return of property or funds. (See Motion dated October 3, 2005)

49. October 11, 2005, Plaintiff's timely Motion to the Superior Court of California, County of San Bernardino, regarding Plaintiff's request for the Transcripts and/or Warrant Information on Confiscated Property and Funds in the dismissed cases. (See Motion dated October 11, 2005)

50. October 11, 2005, letter to Attorney James Crawford, regarding Plaintiff's filing of the three (3) previous Motions in the Superior Court, requesting Mr. Crawford investigate the situation. (See 10-11-2005 letter)

///

///

51. October 11, 2005, letter to the Supervising Judge, Paul M. Bryant, Jr. regarding Plaintiff's Complaint and Investigation concerning the three (3) previous Motions filed in the Superior Court requesting that Judge Bryant oversee the issues personally. (See 10-11-2005 letter)

52. October 14, 2005, response from the U.S. Department of Justice, Civil Rights Division, regarding Plaintiff's inquiry for assistance with the violations in this case. (See 10-14-2005 letter)

53. October 16, 2005, response from E*Trade Financial regarding Plaintiff's inquiry into information needed in this case. (See 10-16-2005 letter)

54. October 24, 2005, letter to the Consulado de Mexico (Consulate of Mexico), Mr. Jose Luis Ala Torre, regarding his visit at the CDCR-ISP in May of 2005 with Plaintiff concerning facts surrounding Plaintiff's circumstances. (See 10-24-2005 letter)

55. October 24, 2005, Plaintiff's reply letter to Shantae Daly of the Bank of America, regarding Ms. Daly's August 18, 2005 letter, which was only now forwarded to Plaintiff, concerning numerous confiscated bank accounts of Plaintiff's whole family. (See 10-24-2005 letter)

56. October 27, 2005, Plaintiff's letter to E*Trade Securities, Mr. Paul Bulf, regarding various activities occurring with Plaintiff's account, and property/funds issues. (See 10-27-2005 letter, pages 1-2)

57. November 1, 2005, response from the Superior Court of California, County of San Bernardino, regarding Plaintiff's October 11, 2005 letter and Motions to the Judge. (See 11-1-2005 letter)

58. November 10, 2005, response from the U.S. Department of Justice, Federal Bureau of Investigations, Civil Rights Unit, Los Angeles County, regarding Plaintiff's September 26, 2005, inquiry concerning the FBI to investigate Civil Rights violations by FBI Agents. (See 11-10-2005 letter)

59. November 10, 2005, follow-up response from the Bank of America, Tampa Florida, regarding Plaintiff's inquiry to locate accounts of Plaintiff. (See 11-10-2005 letter)

60. November 21, 2005, response from the Consulado De Mexico, (Consulate Of Mexico) San Bernardino, California, regarding Plaintiff's inquiry concerning previous meeting. (See 11-21-2005 letter)

61. November 23, 2005, response from E*Trade Financial, Mr. Paul Bulf, regarding Plaintiff's search for information and documentation concerning Plaintiff's accounts with E*Trade, as to the unauthorized activities by State and Federal Officials. (See 11-23-2005 letter)

62. December 2, 2005, Plaintiff's follow-up letter to Shantae Daly, Asst. V.P., Bank of America, regarding request for information on Plaintiff's account statements. (See 12-2-2005 letter)

63. December 2, 2005, Plaintiff's reply letter to the (Consulate of Mexico) regarding requests for assistance with Plaintiff's matters. (See 12-2-2005 letter)

64. December 6, 2005, Plaintiff's letter to E*Trade Securities, Mr. Paul Bulf, regarding a request for information from E*Trade concerning Plaintiff's account activity. (See 12-6-2005 letter)

65. December 6, 2005, Plaintiff's follow-up letter to the (Consulate of Mexico, regarding wire transfer information. (See 12-6-2005 letter)

66. December 6, 2005, Plaintiff's Complaint to: (1) Federal Bureau of Investigations, Washington, D.C.; (2) U.S. Inspector General, Washington, D.C.; (3) Consulado De Mexico, San Bernardino; (4) Michael Ramos, District Attorney, San Bernardino; (5) Shantae Daly, Asst. V.P., B.O.A., Tampa Florida; (6) Mr. Paul Bulf, E*Trade Securities, Sacramento, Ca.; and (7) Judge Paul Bryant, Rancho Cucamonga, Ca. regarding Plaintiff's Complaint and subsequent Complaint that these

Administrations are not conducting appropriate investigations in Plaintiff's allegations of misconduct. (See 12-6-2005 letter, 5-pages)

67. December 6, 2005, Plaintiff's reply to the Federal Bureau of Investigations regarding their March 30, 2004, October 14, 2005, and November 10, 2005, responses and instructions. (See 12-6-2005 letter), 6-pages)

68. December 8, 2005, response from the State Bar of California, Los Angeles, regarding Plaintiff's Complaint concerning the criminal and civil issues in Plaintiff's matters. (See 12-8-2005 letter, 2-pages)

69. December 12, 2005, Plaintiff's letter to the Consulate of Mexico, San Bernardino, regarding a Complaint filed with the Federal Bureau of Investigations, concerning Plaintiff's request for Consulate to investigate. (See 12-12-2005 letter)

70. December 12, 2005, Plaintiff's letter to Judge, Paul Bryant, Superior Court of San Bernardino, informing the Judge that Plaintiff's Complaints and requests for investigations from the Federal Bureau of Investigations remain unaddressed. (See 12-12-2005 letter)

71. December 13/15, 2005, Plaintiff's Motion to the Superior Court of California, County of San Bernardino, regarding Plaintiff's request for Court to rule on previous Motions. (See Motion dated 12-13/15-2005, 3-pages)

72. December 21, 2005, Plaintiff's letter to WM Financial Services, Irvine, California, regarding Plaintiff's inquiry into unauthorized activity with his E*Trade Securities account. (See 12-21-2005 letter)

73. December 21, 2005, Plaintiff's letter to E*Trade Securities, Merrifield, Virginia, regarding status of Plaintiff's accounts and request for Statements. (See 12-21-2005 letter)

///

74. December 27, 2005, response from the Bank of America, Tampa, Florida, regarding Plaintiff's bank accounts that were closed due to "unusual activity" (by State and Federal Officials). (See 12-27-2005 letter)

75. December 29, 2005, response from the Superior Court, San Bernardino, regarding Plaintiff's December 13/15, 2005 Motion for hearing on previous Motions. (See 12-29-2005 Order, 3-pages)

76. January 8, 2006, Plaintiff's request for publication to the New York Times, New York, regarding Complaint filed with the Federal Bureau of Investigations. (See 1-8-2006 letter, 2-pages)

77. January 8, 2006, Plaintiff's request for publication to the New York Times, regarding Motion for an Investigation for Corruption by City, County, State and Federal Officials. (See 1-8-2006 letter)

78. January 8, 2006, Plaintiff's letter to Barry Berstein, Attorney at Law, regarding request for an investigation into property and funds confiscated, charges dismissed, but property and funds not returned. (See 1-8-2006 letter, 2-pages)

79. January 15, 2006, Plaintiff's letter to the Office of Thrift Supervision, Department of the Treasury, San Francisco, California, regarding information as to the status of inquiry concerning Washington Mutual Bank and Washington Mutual Financial Securities. (See 1-15-2006 letter)

80. January 18, 2006, Plaintiff's request for information to Rodney Davis, Special Agent, Department of the Treasury, Washington, D.C., regarding an investigation into Plaintiff's Complaint. (See 1-18-2006 letter)

81. January 22, 2006, Plaintiff's letter to the Federal Deposit Insurance Corporation, Kansas City, MO., regarding wire transfers involving the San Bernardino County Sheriff's Department; request for proof of transfer and transfer endorser. (See 1-22-2006 letter, 2-pages)

23

82. January 27, 2006, response from the Bank of America, Brea, California, regarding Plaintiff's request for copies of statements for several savings accounts.  (See 1-27-2006 letter)

83. January 30, 2006, response from the U.S. Department of Justice, Federal Bureau of Investigations, Civil Rights Unit, Riverside, California, regarding Plaintiff's January 22, 2006, Complaint.  (See 1-30-2006 letter and certified mail receipt)

84. January 30, 2006, Plaintiff's inquiry to the Bank of America regarding fraudulent activities taken against Plaintiff, and request for information.  (See 1-30-2006 letter)

85. January 30, 2006, Plaintiff's inquiry to the U.S. Securities and Exchange Commission, Washington, D.C., regarding information on: (1) National Financial Services; (2) W.M. Financial Services; (3) E*Trade Group Securities; (4) EDGAR Inc., concerning tax information for the I.R.S.  (See 1-30-2006 letter, 3-pages)

86. January 31, 2006, response from the Comptroller of the Currency, Houston, Texas, regarding Plaintiff's inquiry of the Bank of America, National Association, concerning requested information.  (See 1-31-2006 letter, 2-pages)

87. February 1, 2006, Plaintiff's inquiry to Court Clerk regarding Superior Court's December 29, 2005, denial of Motion concerning which Motion[s] were denied.  (See 2-1-2006 letter and attached 7-pages)

88. February 2, 2006, Plaintiff's inquiry to acquire type-written transcripts of the proceedings in the cases at hand, which were dismissed.  (See 2-2-2006 letter, 3-pages)

89. February 2, 2006, response from E*Trade Financial, Rancho Cordova, California, regarding activities within Plaintiff's E*Trade accounts, and denial of copies of account statements.  (See 2-2-2006 letter)

24

90. February 2, 2006, response from Washington Mutual, Milwaukee, WI., regarding Plaintiff's inquiry into status of research.  (See 2-2-2006 letter)

91. February 2, 2006, response from Washington Mutual, Milwaukee, WI., regarding Plaintiff's inquiry into status of research.  (See 2-2-2006 letter)

92. February 9, 2006, response from the Superior Court of California, San Bernardino, regarding Plaintiff's request for transcripts concerning the cases that were dismissed.  (See 2-9-2006 letter)

93. February 9, 2006, response from the U.S. Securities and Exchange Commission, Washington, D.C., regarding Plaintiff's inquiry for information re: (1) Bank of America; (2) E*Trade Group; (3) Washington Mutual; (4) Citizens Business Bank; (5) United Missouri Bank.  (See 2-9-2006 letter)

94. February 10, 2006, response from the Federal Deposit Insurance Corporation, Washington, D.C., regarding Plaintiff's request for assistance and enclosed questionnaire.  (See 2-10-2006 letter)

95. February 16, 2006, response from the U.S. Securities and Exchange Commission, Washington, D.C., regarding Plaintiff's inquiries into Sonic Solutions, Inc., Turner Broadcasting, Spruce Technologies, Que Pasa and R&B Falcon.  (See 2-16-2006 letter)

96. March 2, 2006, response from the U.S. Securities and Exchange Commission, Washington, D.C., regarding Plaintiff's January 15 and 30, inquiries requesting information about various companies.  (See 3-2-2006 letter)

97. March 20, 2006, Plaintiff's letter to Stacy Hodoh, regarding the need to acquire court transcripts on a dismissed case concerning the return of property and funds taken because of the case.  (See 3-20-2006 letter

98. March 21, 2006, Plaintiff's letter to the Comptroller of the Currency regarding inquiries dated November 15, 2004, and January 31, 2006.  (See 3-21-2006 letter)

99. March 29, 2006, Plaintiff's Department of Corrections Appeal and Citizen's Complaint regarding legal documents mailed, but never received.  (See CDCR-602 Appeal, 3-29-2006; letter to Inmate Appeals, Sacramento, 2-1-2006 and 3-30-2006)

100. March 30, 2006, Plaintiff's Motion to the Superior Court, San Bernardino, regarding transcripts of Preliminary Hearing and minute orders of the dismissed cases.  (See 3-30-2006 Motion and attachments, 8-pages)

101. April 28, 2006, response from the Inmate Appeals, Sacramento, California, regarding the March 29, 2006, Appeal and Complaint.  (See 4-28-2006 letter)

102. April 30, 2006, response from the Inmate Appeals, Sacramento, regarding the March 29, 2006, Appeal and Complaint.  (See 4-28-2006 letter)

103. April 4, 2006, response from the Superior Court, San Bernardino, regarding Plaintiff's March 30, 2006, Motion for transcripts.  (See 4-4-2006 letter)

104. May 9, 2006, response from the Appellate Defenders, Inc., San Diego, regarding Plaintiff's inquiry concerning the transcripts of the dismissed cases.  (See 5-9-2006 letter, 2-pages)

105. May 9, 2006, Minute Orders regarding the dismissed cases.  (See 5-9-2006 Minute Orders, 6-pages)

106. May 22, 2006, response from the Superior Court, San Bernardino, regarding Plaintiff's Motion Petitioning Court for an investigation for corruption by State and Federal Officials.  (See 5-22-2006 letter)

107. August 29, 2006, response from the Commission on Judicial Performance, San Francisco, concerning Plaintiff's February 2006 through May 2006, Complaints about various California Judges.  (See 8-29-2006 letter)

108. September 22, 2006, response from the Superior Court, San Bernardino, regarding Plaintiff's Motion for the transcripts of the dismissed cases.  (See 9-22-2006 letter)

109. September 28, 2006, response from the U.S. Securities and Exchange Commission, Washington, D.C., regarding Plaintiff's request for information about various companies.  (See 9-28-2006 letter)

110. September 30, 2006, Plaintiff's inquiry to the Department of the Treasury, Washington, D.C., regarding assistance and investigation into the Complaint allegations.  (See 9-30-2006 letter)

111. October 23, 2006, Plaintiff's inquiry to Greenburg Glusker, Attorney at Law, regarding Plaintiff's request for Firm to represent him in Plaintiff's civil action (instant action).  (See 10-23-2006 letter)

112. October 23, 2006, Plaintiff's inquiry to Foley & Lardner, LLP, Los Angeles, California, regarding Plaintiff's request for Firm to represent him in his civil action (instant action).  (See 10-23-2006 letter)

113. October 23, 2006, Plaintiff's inquiry to the U.S. Department of Justice, Federal Bureau of Investigations, regarding assistance from the FBI to address Plaintiff's allegations once and for all. (See 10-23-2006 letter)

114. November 7, 2006, response from the Department of the Treasury, Washington, D.C., regarding Plaintiff's Complaint.  (See 11-7-2006 letter)

///

///

115. November 7, 2006, Plaintiff's inquiry to the Department of the
Treasury, Internal Revenue Service, Criminal Investigation Division,
regarding assistance from the IRS in conducting an investigation into
Plaintiff's allegations of numerous internal issues of dishonesty,
illegal and illicit acts against Plaintiff, his property and money.
(See 11-7-2006 letter)

116. November 7, 2006, Plaintiff's inquiry to the U.S. Department of
Justice, Civil Rights Division, Washington, D.C., regarding assistance
from the DOJ in conducting investigations into Plaintiff's Complaint
concerning DOJ Offciers' internal issues of dishonesty, illegal and
illicit acts against Plaintiff, his property and money.  (See 11-7-
2006 letter)

117. November 7, 2006, Plaintiff's inquiry to the Department of the
Treasury, Treasury Inspector General, Tax Administration, regarding
assistance from the DOT in conducting investigations into Plaintiff's
Complaint concerning DOT Officers' internal issues of misconduct,
illegal and illicit acts against Plaintiff, his property and money.
(See 11-7-2006 letter)

118. November 7, 2006, response from the Department of the Treasury
regarding Plaintiff's Complaint.  (See 11-7-2006 letter)

119. November 29, 2006, Plaintiff's inquiry to the Department of the
Treasury, Internal Revenue Service, regarding two previous Complaints
to this Department that remain unanswered.  (See 11-29-2006 letter)

120. December 28, 2006, response from the Department of the Treasury,
Internal Revenue Service, regarding Plaintiff's September 27, 2006,
inquiry.  (See 12-28-2006 letters, 6-pages)

121. January 5, 2007, through July 13, 2007, CDCR-119 documents regarding
"Legal Out" Legal Mail.  (See documents, 2-pages)

28

122. January 6, 2007, Plaintiff's inquiry to the Department of the Treasury, Internal Revenue Service, regarding two previous Complaints that remain unanswered.  (See 1-6-2007 letter)

123. January 20, 2007, Plaintiff's inquiry to the Department of the Treasury, Rodney Davis, Special Agent in Charge, Special Inquiries and Intelligence Division, regarding information to support the Complaint in that Department.  (See 1-20-2007 letter, 2-pages)

124. February 28, 2007, Plaintiff's inquiry to Ronald A. Jakob, Deputy Attorney General, San Diego, regarding an investigation concerning Plaintiff's unanswered Complaints.  (See 2-28-2007 letter)

125. March 5, 2007, Plaintiff's inquiry to the Department of the Treasury, Internal Revenue Service, regarding tax issues due to the actions taken against Plaintiff by Government Officials.  (See 3-5-2007 letter)

126. March 5, 2007, Plaintiff's inquiry to the Department of the Treasury, Internal Revenue Service, regarding tax issues due to the actions taken against Plaintiff by Government Officials.  (See 3-5-2007 letter)

127. March 14, 2007, response from the U.S. Securities and Exchange Commission, Operations Center, Alexandria, Virginia, regarding Plaintiff's request for copies of documents filed with the Commission. (See 3-14-2007 letter)

128. March 15, 2007, response from the U.S. Securities and Exchange Commission, regarding plaintiff's request for documents.  (See 3-15-2007 letter)

129. March 15, 2007, response from the U.S. Department of Justice, Criminal Division, regarding Plaintiff's inquiry to the DOJ for an investigation of: (1) FPA Medical Management; (2) American Shared Hospital Services; and (3) R&B Falcon.  (See 3-15-2007 letter)

///

130. March 25, 2007, Plaintiff's inquiry to the Internal Revenue Service, Freedom Of Information Reading Room, Washington, D.C., regarding assistance from the IRS concerning reporting and investigating a Complaint on tax fraud. (See 3-25-2007 letter; see also following page)

131. March 30, 2007, response from the Department of Justice, Sacramento, California, regarding Plaintiff's letter to the Attorney General concerning the U.S. Internal Revenue Service and the U.S. Treasury Inspector General for Tax Administration (TIGTA). (See 3-30-2007 letter)

132. April 18, 2007, response from the Department of the Treasury, Internal Revenue Service, Washington, D.C., regarding Plaintiff's March 25, 2007 request for information pursuant to the Freedom Of Information Act (FOIA). (See 4-18-2007 letter, 2-pages)

133. April 22, 2007, Plaintiff's inquiry to Senator, Dianne Feinstein, San Francisco, regarding an investigation into certain State and Federal agencies concerning Plaintiff's allegations. (See 4-22-2007 letter)

134. April 22, 2007, Plaintiff's inquiry to Senator, Barbara Boxer, San Francisco, regarding an investigation into certain State and Federal agenices concerning Plaintiff's allegations. (See 4-22-2007 letter and Exhibits package list, 2-pages)

135. April 26, 2007, Plaintiff's inquiry to the U.S. Securities and Exchange Commission, Washington, D.C., regarding Plaintiff's inquiry pursuant to the Freedom Of Information Act concerning information as to any connection between Charles O. Rossotti and Charles R. Ofner. (See 4-26-2007 letter, see also Privacy Act Request dated 5-14-2007)

///
///

136. May 21, 2007, response from the Department of the Treasury, Washington, D.C., regarding Plaintiff's March 25, 2007, inquiry concerning the Freedom Of Information Act request. (See 5-21-2007 letter, 4-pages)

137. May 25, 2007, response from Senator, Dianne Feinstein, regarding Plaintiff's April 22, 2007, inquiry. (See 5-25-2007 letter)

138. June 7, 2007, Plaintiff's reply to Senator, Dianne Feinstein's May 25, 2007, response; including Freedom Of Information Act request; Declaration of Jose Guzman Salcedo; and Verification of Jose Guzman Salcedo. These documents were also sent to: (1) Internal Revenue Service, Bloomington, IL.; (2) Internal Revenue Service, Baltimore, MD; (3) Internal Revenue Service, San Bernardino, Ca.; (4) Internal Revenue Service, Washington, D.C.; and (5) National Personnel Records Center, St. Louis, MO.. (See 6-19-2007 letter FOIA, Declaration, and Verification. See also, proof of services, 10-pages)

139. June 27, 2007, response from the National Personnel Records Center, St. Louis, MO., regarding Plaintiff's inquiry concerning any connection between Charles O. Rossotti, and Charles R. Ofner. (See 6-27-2007 letter)

140. July 6, 2007, response from the Internal Revenue Service, Washington, D.C., regarding Plaintiff's June 19, 2007, inquiry, which was received in the Baltimore Office on June 27, 2007, transferred to and received in the Cincinnati Office on July 3, 2007, and transferred to and received in the Detroit Office on July 5, 2007; a duplicate request and response also addressing a June 18, 2007, inquiry to the Kansas City Office. (See 7-6-2007 letter)

141. July 30, 2007, response from the U.S. Department of Justice, Civil Rights Division, Washington, D.C., regarding Plaintiff's November 7, 2006, inquiry concerning the Civil Rights violation. (See 7-6-2007 ltr)

31

142. August 1, 2007, response from the U.S. Securities and Exchange Commission, Washington, D.C., regarding Plaintiff's May 14, 2007, inquiry concerning any connection between Charles O. Rossotti, and Charles R. Ofner.  (See 8-1-2007 letter)

143. August 24, 2007, response from the Department of the Treasury, Internal Revenue Service, Washington, D.C., regarding Plaintiff's March 25, 2007, inquiry pursuant to the Freedom Of Information Act. (See 8-24-2007 letter, 2-pages)

144. December 2, 2007, Plaintiff's inquiry/reply to the Department of the Treasury, Internal Revenue Service, Washington, D.C., regarding information on Charles O. Rossotti, in response to the DOT's June 18, 2007, response.  (See 12-2-2007 letter, 6-pages)

145. December 12, 2007, Plaintiff's inquiry to the Department of the Treasury, Special Inquiries and Intelligence Division, regarding the lack of responses--indeed, a lack of concern in providing Plaintiff with any information or discovery.  (See 12-12-2007 letter and attachments, 10-pages)

146. December 12, 2007, Plaintiff's inquiry to Attorney Heller Ehrman, San Francisco, Ca., regarding a non response from Plaintiff's previous inquiry concerning an attorney to Plaintiff's civil matters (instant case).  (See 12-12-2007 letter, 3-pages)

147. December 12, 2007, Plaintiff's follow-up inquiry to the American Stock Transfer & Trust Company, New York, regarding obtaining certain information and documents needed to support Plaintiff's civil rights violation claims.  (See 12-12-2007 letter and attachments)

///

///

///

148.  December 12, 2007, Plaintiff's inquiry to E*Trade Financial Supervision, E*Trade Securities, Inc., Menlo Park, Ca., regarding the lack of response in Plaintiff's previous inquiries.  (See 12-12-2007 letter and attachments, 12-pages)

149.  December 26, 2007, response from the American Stock Transfer & Company regarding Plaintiff's December 12, 2007, inquiry concerning stock trasfers, records and accountability.  (See "February 7, 2006" letter, and attachments, 4-pages)

150.  January 12, 2008, Plaintiff's inquiry/reply to the American Stock Transfer & Company regarding certain information and documents pertinent to this case.  (See 1-12-2008 letter)

   WHEREFORE, Plaintiff's Complaint is timely as there is no accrual date, being, this is an ongoing action.  Due diligence.

   Plaintiff is entitled to a ruling of compensation consistent with the emotional, psychological, physical, compensatory, punitive, and monetary losses incurred as a result of the aforementioned actions by Government Officials.  Plaintiff is further entitled to a ruling consistent with full restoration of Plaintiff (and his family) to status quo ante.  Especially since all criminal charges to this matter were dismissed.

Dated:  03/27/08

Jose Guzman Salcedo

## E. REQUEST FOR RELIEF

I believe that I am entitled to the following specific relief:

To recover damages for injury to Plaintiff's person or property, or because of the deprivation of any right or privilege of Plaintiff, by any act done in furtherance of any conspiracy mentioned in Section 1985 of Title 42;

To recover damages from any person who failed to prevent or aided in preventing any wrongs mentioned in Section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

To redress the deprivation, under color of any State law, Statute, Ordinance, Regulation, Custom or Usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote;

To recover property taken or confiscated from Plaintiff's Residence located at 12770 Amber Lane in Rancho Cucamonga, Ca. 91739, in the effect of (1) All household furniture and household items, unlimited, including but not limited to: (2) Stock Certificates; (3) Bonds; (4) Lawsuit court paperwork; (5) U.S. Currency in an undetermined amount, but approximately $60,000; (6) Cashier's Checks; (7) Mexican Pecos in an undetermined amount in a duffle bag taken from Plaintiff's impounded vehicle. See Trial transcripts; (8) Currency from other countries in an undetermined amount; (9) Traveler's checks; (10) Wire transfers;

To recover Plaintiff's Residential properties taken or confiscated but not returned after dismissal of charges and case, including but not limited to:

(1) 1340 Palomares St., Pomona, Ca. 91766

(2) 1344 Palomares St., Pomona, Ca. 91766

(3) 1356 Palomares St., Pomona, Ca. 91766

(4) 1390 Palomares St., Pomona, Ca. 91766

(5) 12770 Amber Lane, Rancho Cucamonga, Ca. 91739;

(SEE ATTACHED CONTINUATION>>>>

03/27/08
*(Date)*

*Jose J. Salcedo*
*(Signature of Plaintiff)*

CONTINUATION: Request For Relief

(6) 404 South Towne Ave., Pomona, Ca. 91766 (Shop);

(7) 804 South Eleanor St., Pomona, Ca. 91766.

To recover several personal motor vehicles taken or confiscated but not returned after dismissal of charges and case, including but not limited to:

(1) 1990 Motor Home;                    (8) 1981 Ford Diesel Water Truck

(2) 1996 Suburban;                      (9) 1985 Ford Diesel Water Truck

(3) 1996 Mercedez;

(4) 1999 Ford Truck;

(5) 1999 Cadillac;

(6) 2001 Suburban;

(7) 2002 500 Mercedez Convertible;

To recover all bank accounts and monies therein status quo ante, that were closed, blocked, frozen, or confiscated and not returned after the dismissal of charges and case, including but not limited to:

(1) Plaintiff incorporates by reference all bank accounts listed in the instant Complaint, and any other non-listed account that was closed, blocked frozen, or confiscated in this case, as though fully set forth here;

To compensation consistent with the emotional, physical, psychological, compensatory, punitive losses incurred as a result of the conduct and actions committed by Defendants in this case, in their individual and official capacities;

To a ruling consistent with restoring Plaintiff and his family to Status Quo Ante;

To any further relief this Court deems appropriate in the interests of justice.

///

///

///

35

PROOF OF SERVICE

Declaration of Service by Mail

I, ___Jose Guzman Salcedo_____, declare that I am over the age of

Eighteen (18) and that I (am / ~~am not~~) a party to this action. On _March_

___27___, 20__08____, I deposited a copy of the following document (s):

CIVIL RIGHTS COMPLAINT PURSUANT TO

42 U.S.C. §1983 AND

BIVINS V. SIX UNKNOWN AGENTS, 403 U.S. 388 (1971)

in a sealed envelope with the postage prepaid into the United States mail

outlet via an authorized California Department of Corrections employee at

Ironwood State Prison, in Riverside County, Blythe, California, and

address as follows:

1. Clerk of the U.S. District Court
   District of Columbia, Washington
   U.S. Courthouse
   333 Constitution Ave. NW
   Washington, D.C. 20001-2804

I declare under penalty of perjury by the laws of the State of

California that the foregoing is true and correct (pursuant to 28 USCA § 1746 (2) ).

DATE _03_/_27_/_08_                    SIGNATURE _Jose G. Salcedo_

                                        Jose Guzman Salcedo
                                        Plaintiff

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

F
08- 814
RMC

## I (a) PLAINTIFFS

Jose Guzman Salcedo

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  88888
(EXCEPT IN U.S. PLAINTIFF CASES)

PRO SE (PR)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
# V30843   A2-143U

## DEFENDANTS

Charles O. Rossotti, et al.,

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

Case: 1:08-cv-00814
Assigned To : Collyer, Rosemary M.
Assign. Date : 5/12/2008
Description: Pro Se Gen. Civil

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

☐ **A. Antitrust**

☐ 410 Antitrust

☐ **B. Personal Injury/Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

☐ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

☐ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

☐ **E. General Civil (Other)** OR ☒ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Immigration**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus- Alien Detainee
☐ 465 Other Immigration Actions

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☒ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant

☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.

☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not Administrative Agency Review or Privacy Act)

O

| □ G. *Habeas Corpus/ 2255*<br><br>□ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ H. *Employment Discrimination*<br><br>□ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ I. *FOIA/PRIVACY ACT*<br><br>□ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | □ J. *Student Loan*<br><br>□ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| □ K. *Labor/ERISA (non-employment)*<br><br>□ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ L. *Other Civil Rights (non-employment)*<br><br>□ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other | □ M. *Contract*<br><br>□ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ N. *Three-Judge Court*<br><br>□ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

□ 1 Original Proceeding    □ 2 Removed from State Court    □ 3 Remanded from Appellate Court    □ 4 Reinstated or Reopened    □ 5 Transferred from another district (specify)    □ Multi district Litigation    □ 7Appeal to District Judge from Mag. Judge

---

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 USC 1983

---

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    □    **DEMAND $** 0    Check YES only if demanded in complaint    **JURY DEMAND:** ☒ YES    □ NO

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    □ YES    ☒ NO    If yes, please complete related case form.

**DATE** 5/12/08    **SIGNATURE OF ATTORNEY OF RECORD** ICD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

*UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF COLUMBIA*

| | |
|---|---|
| **JOSE GUZMAN SALCEDO** | |
| Plaintiff(s), | |
| vs. | **Civil Action No.  08-814 (RMC)** |
| CHARLES O. ROSSOTTI, et al. | |
| Defendant(s). | |

## <u>NOTICE REGARDING BULKY EXHIBITS</u>

Pursuant to the procedures for filing bulky pleadings, bulky exhibits have been filed in paper in this case.  The exhibits are available at the Clerk's Office for public viewing  and copying between the  hours of 9:00 a.m. and  4:00 p.m., Monday through Friday.

**NANCY MAYER-WHITTINGTON**

Clerk